UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE NORTHWEST IRONWORKERS HEALTH AND SECURITY FUND et al., <br><br> Plaintiffs, <br><br> v. <br><br> PETERSON REBAR PLACEMENT LLC, <br><br> Defendant. | CASE NO. C24-0586-KKE <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT |

Plaintiffs (hereinafter "the Trust Funds") filed this action to enforce the obligations of Defendant Peterson Rebar Placement LLC ("Peterson Rebar") owed under agreements formed under the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 1. Peterson Rebar has not appeared in this action, and the clerk entered an order of default against it. Dkt. No. 8. The Trust Funds then filed a motion for default judgment. Dkt. No. 9. Because the Trust Funds have shown that they are entitled to default judgment on their claims against Peterson Rebar, the Court will grant their motion in part. However, Plaintiffs have failed to sufficiently support their requested monetary damages, so the Court denies the motion in that respect and instructs Plaintiffs to supplement the record with the necessary documentation.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 1

## I.    BACKGROUND

The Trust Funds provide healthcare, retirement, death, and education benefits under ERISA. Dkt. No. 1 ¶¶ 1.1–1.5. In September 2018, Peterson Rebar entered an Independent Agreement with the Iron Workers District Counsel of the Pacific Northwest. Dkt. No. 10 at 9. This Independent Agreement incorporated the terms of the Master Labor Agreement ("MLA") and bound Peterson Rebar to each subsequent MLA unless Peterson Rebar terminated the Independent Agreement in writing. *Id.* The Independent Agreement and the MLA both incorporated the terms of each Trust Fund's Trust Agreement. *Id.* at 9, 30–33. Under the MLA and incorporated Trust Agreements, if Peterson Rebar "fails to report the names and hours of employees by the 25th day of the calendar month" it agrees to pay liquidated damages of "16% or $250, whichever is greater" and interest at "18% per annum from the 15th day of the calendar month in which contributions become due and payable." *Id.* at 33, 55–66. Peterson Rebar also agreed to pay for reasonable costs and attorneys fees "incurred in the collection of delinquent contributions[.]" *Id.*

The Trust Funds also act "as a collection agent" for other trusts that are specified in the MLA, including the "N.W. Industry Trust Fund, Ironworkers Management Progressive Action Cooperation Trust (IMPACT), Working Assessment, District Counsel Political Action Fund (PAC), Supplemental Dues, Market Recovery and Health Reimbursement Arrangements (HRA)." Dkt. No. 1 ¶¶ 3.15–3.16. Each of these "ancillary trusts" include the same liquidated damages, interest, and attorney's fees provisions as the Trust Funds. Dkt. No. 10 at 33.

Peterson Rebar submitted contribution reports for December 2023 through April 2024 (Dkt. No. 10 at 47–52), but incorrectly listed only certain worked hours as "union hours." Dkt. No. 10 ¶ 16. The Trust Funds submitted evidence that all of the hours listed by Peterson Rebar in these monthly reports should be considered when calculating the contributions owed to the Trust Funds and ancillary trusts. Dkt. No. 11 ¶¶ 4–8, Dkt. No. 10 ¶ 19. The Trust Funds brought this

lawsuit to collect these delinquent contributions, liquidated damages, interest, and attorney's fees. Dkt. No. 1.

An order of default was entered against Peterson Rebar in June 2024. Dkt. No. 8. The Trust Funds then filed this motion for default judgment. Dkt. No. 9.

## II.  ANALYSIS

### A.  Jurisdiction

Before entering default judgment, a court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

Here, the Court has federal question jurisdiction because the action arises under ERISA. Dkt. No. 1 ¶ 2.1. Peterson Rebar resides and operates in this district, and was served in this district (*id.* ¶ 1.7, Dkt. No. 5), and the Court thus properly exercises personal jurisdiction over Peterson Rebar. *See S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007) ("Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.").

### B.  Legal Standards

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering a motion for default judgment, the court takes "the well-pleaded factual allegations" in the pleadings "as true[,]" but "necessary facts not contained in the

pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

When considering whether to exercise its discretion to enter a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015).

This district also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### C. The Trust Funds Are Entitled to Default Judgment.

The Court now turns to apply the *Eitel* factors to this case, and finds that they support entry of default judgment against Peterson Rebar on the claims brought by the Trust Funds.

The first factor—prejudice to the Trust Funds—supports entry of default judgment because the Trust Funds would suffer prejudice if default judgment were denied. Because Peterson Rebar has failed to defend, the Trust Funds would "be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery" if default judgment were not entered. *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  The Trust Funds submitted documentation showing that Peterson Rebar was obligated to pay fringe benefit contributions to them (Dkt. No. 10 at 9, 30–33) and has failed to do so (*id.* ¶ 21).  Because the Trust Funds' allegations are assumed to be true for purposes of resolving this motion and their complaint and documentation sufficiently allege and support their request for relief, the Court finds that the second and third *Eitel* factors support entry of default judgment.

The fourth *Eitel* factor is the sum of money at stake, and in this action, the Trust Funds seek an award totaling $12,759.45.  *See* Dkt. No. 9-1.  Because the amount sought was contractually agreed to by Peterson Rebar, the Court finds the amount sought is proportional to the seriousness of Peterson Rebar's conduct and thus favors entry of default judgment.  *See Curtis*, 33 F. Supp. 3d at 1212.

The fifth *Eitel* factor—the possibility of dispute over material facts—also favors entry of default judgment.  Generally, after "default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212.

The sixth *Eitel* factor—whether default is due to excusable neglect—favors entering default judgment because Peterson Rebar has failed to defend this action, despite proper service of the summons and complaint.  *See* Dkt. No. 5.

The seventh *Eitel* factor—the policy favoring resolution of disputes via contested litigation—weighs against entry of default judgment.  This factor is outweighed by the other factors, however, and default judgment is not precluded based on this policy.  *See Emp. Painters' Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *4 (W.D. Wash.

July 6, 2020) (finding "that in instances where a defendant's failure to appear makes a decision on the merits 'impractical, if not impossible,' any preference for deciding cases on the merits 'does not preclude a court from granting default judgment'" (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002))).

Because the *Eitel* factors on balance favor entry of default judgment, the Court will grant the Trust Funds' motion.

**D.     The Amounts Sought by the Trust Funds Are Not Supported by the Record.**

Once a court determines default judgment is proper, it then ensures "the amount of damages is reasonable and demonstrated by the evidence." *Curtis*, 33 F. Supp. 3d at 1211.  The Trust Funds must provide "a concise explanation of how all amounts were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought." LCR 55(b)(2)(A).

The Trust Funds seek $7,772.25 in contributions, $1,113.18 in liquidated damages, and $832.52 in prejudgment interest.  Dkt. No. 10 ¶ 21.  The Trust Funds provide sufficient evidence to support that all hours in Peterson Rebar's contribution reports are subject to contributions to the Trust Funds.  *Id.* ¶ 19, Dkt. No. 11.  But the Trust Funds provide two categories of conflicting evidence that prohibit entry of judgment for these amounts.  First, the contribution reports from Peterson Rebar list different rates for certain funds than the rate listed in the Trust Funds' summary document.  *Compare* Dkt. No. 10 at 48–52 (listing rates for Health Trust as 9.09, Annuity Trust as 8.6, and IMPACT Trust as .32), *with* Dkt. No. 10 at 54 (listing rates for Health Trust as 9.34, Annuity Trust as 8.85, and IMPACT Trust as .33).  Second, it is not clear what "West JM/JM Assessment" and "West AP/APP Assessment" represent in the contribution report and summary reports.  Thus the Court cannot confirm the liquidated damages, interest rates, and attorney's fees

terms of the MLA apply to those amounts or that the Trust Funds can act as a "collection agent" for those amounts. *See* Dkt. No. 10 at 49–52, 54. And, again, the rates for those categories differ, without explanation, between Peterson Rebar's contribution reports and the Trust Funds' summary. *Compare* Dkt. No. 10 at 48–52, *with* Dkt. No. 10 at 54.

Because the Trust Funds provide conflicting evidence of the damages owed by Peterson Rebar, the Court will allow the Trust Funds the opportunity to supplement their evidence to address these disputes and provide updated calculations (if necessary) on the amount of delinquent contributions, liquidated damages, prejudgment interest, and attorney's fees sought.

### III.  CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for entry of default judgment. Dkt. No. 9.

Plaintiffs are entitled to default judgment against Defendant. But the Court denies the amount Plaintiffs request in monetary relief and, instead, orders Plaintiffs to provide supplemental declarations and/or briefing to properly support the damages they seek. Plaintiffs must file this supplemental information no later than January 31, 2025.

Dated this 17th day of January, 2025.

Kymberly K. Evanson
United States District Judge